2008 ME 149

**LIBERTY INSURANCE UNDERWRITERS, INC.**

v.

**ESTATE OF Peter D. FAULKNER et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 23, 2007.
Decided: Oct. 7, 2008.

Martica S. Douglas, Esq. (orally), Douglas, Denham, Buccina & Ernst, Portland, ME, for Liberty Insurance Underwriters.

James J. Shirley, Esq. (orally), Kenneth D. Keating, Esq., Roberts & Shirley Law Offices, Springvale, ME, for Cooke & Young Development, LLC.

James F. Cloutier, Esq., Cloutier, Barrett, Cloutier & Conley, Portland, ME, for Karl Hoose, Robin Hoose, Alan Russell and Debra Russell.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SILVER, J.

[¶ 1] This case was reported pursuant to Rule 24 of the Maine Rules of Appellate Procedure following the denial of the summary judgment motions of Liberty Insurance Underwriters, Inc. and defendant Cooke & Young Development, LLC (York County, *Fritzsche, J.*). We accept and answer three of the five questions reported,[1] and remand for further action.

## I. BACKGROUND

[¶ 2] In 2003, attorney Peter D. Faulkner, a solo practitioner, submitted an application for lawyer's professional liability insurance from Liberty. The application contained the following question: "After inquiry, has any lawyer to be insured under this policy ... ever been disbarred or been the subject of reprimand, censure, sanction, or other disciplinary action, or been refused admission to the Bar?" The correct answer would have been "yes." A Grievance Commission panel of the Maine

Board of Overseers of the Bar found that Faulkner neglected a client's matter, in violation of M. Bar R. 3.6(a)(3); he failed to timely respond to the client or his subsequent attorney and turn over files to the client, in violation of M. Bar R. 3.6(e)(2)(iv); and he failed to provide the financial accounting requested by the client, in violation of M. Bar R. 3.6(e)(2)(iii). He received a reprimand in 2002. Despite this, the question on the insurance application was answered "no." He also provided two different dates on which his firm was started. Liberty approved the application and issued Faulkner a professional liability policy in September 2003.

[¶ 3] Faulkner submitted a renewal application[2] one year later. The renewal application contained the following question: "After inquiry, have any of the following occurred *during your expiring policy:* ... Disciplinary actions against any lawyer (including disbarment/reprimand, censure or sanction)?" (Emphasis added.) Faulkner answered "no" and Liberty renewed his policy. Faulkner also disclosed a claim against him, that he deemed frivolous, in the renewal application and submitted a supplemental application to explain the nature of the claim. Liberty investigated the claim and then issued the renewal policy.

[¶ 4] Faulkner died in 2005. Liberty brought a declaratory judgment action against Faulkner's estate and certain former clients who have claims against the estate for alleged breaches of professional responsibility. Liberty seeks, pursuant to

1. Originally, four questions were reported, but one of them was compound; for clarity, we address them as five separate questions.

2. For simplicity, we refer to the relevant documents as a "renewal" application and

"renewal" policy, but whether these are renewals must be determined on remand, as explained below in our answer to the third question on report.

24–A M.R.S. § 2411 (2007),[3] to rescind the policy, based on Faulkner's misrepresentation in the original application. After denying the parties' summary judgment motions, and with the agreement of the parties, the court issued an order reporting questions to this Court pursuant to M.R.App. P. 24. The reported questions are as follows:

1. Whether 24–A M.R.S. § 2411(1) and (2) should be read in the conjunctive when applied to applications for professional liability insurance;

2. Whether an insurer must show actual reliance in order to rescind a policy under section 2411;

3. Whether section 2411 permits rescission of a renewal policy based on a misrepresentation contained in the original application for insurance;

4. Whether either party is entitled to summary judgment on the issue of actual reliance; and

5. Whether either party is entitled to summary judgment on the issue of fraud.

## II. DISCUSSION

■■■■ [¶ 5] Rule 24 of the Maine Rules of Appellate Procedure sets forth the criteria necessary for the trial court to report a case to the Law Court. Rule 24 states:

(a) **Report by Agreement of Important or Doubtful Questions.** The court may, where all parties appearing so agree, report any action in the trial court to the Law Court if it is of the opinion that any question of law presented is of sufficient importance or doubt to justify the report, provided that the decision thereof would in at least one alternative finally dispose of the action.

. . . .

(c) **Report of Interlocutory Rulings.** If the trial court is of the opinion that a question of law involved in an interlocutory order or ruling made by it ought to be determined by the Law Court before any further proceedings are taken, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

Rule 24 is an exception to the final judgment rule. The final judgment rule is a judicially-created doctrine that promotes efficiency and reduces costs by requiring parties to obtain a final judgment at the trial level before seeking appellate review. Alexander, *Maine Appellate Practice* § 301 at 195–96 (2008). Rule 24 permits parties, in limited circumstances, to obtain

3. Title 24–A M.R.S. § 2411 (2007) states:

All statements and descriptions in any application for insurance or for an annuity contract, by or in behalf of the insured or annuitant, are deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements may not prevent a recovery under the policy or contract unless either:

1. Fraudulent; or

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer, such that the insurer in good faith would either not have issued the insurance or contract, or would not have issued it at the same premium rate, or would not have issued insurance in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

3. Deleted. Laws 1999, c. 223, § 1.

To prevent a recovery under this section for any application for life, credit life, disability, long-term care, accidental injury, specified disease, hospital indemnity or credit or accident insurance, an insurer need only prove one of the acts described in this section, not an act under subsections 1 and 2.

review from the Law Court prior to obtaining a final judgment from the trial court. *Id.* § 24.1 at 170. Rule 24 " 'should be used sparingly.' " *Id.* § 24.2 at 172 (quoting *White v. Fleet Bank of Me.*, 1999 ME 148, ¶ 2, 739 A.2d 373, 374–75).[4]

[¶ 6] After the trial court makes a decision to report questions for our review, we independently determine whether to accept the report. We must determine whether our acceptance " 'would be consistent with our basic function as an appellate court,' " or would improperly place us " 'in the role of an advisory board.' " *Id.* § 24.2 at 172 (quoting *Morris v. Sloan*, 1997 ME 179, ¶ 7, 698 A.2d 1038, 1041).

[¶ 7] In making our determination pursuant to Rules 24(a) and (c), we consider several factors. First, we consider whether the question reported is "of sufficient importance and doubt to outweigh the policy against piecemeal litigation." *York Register of Probate v. York County Probate Court*, 2004 ME 58, ¶ 11, 847 A.2d 395, 398 (quotation marks omitted). We have previously determined that questions involving novel issues of law may meet the requirements for importance and doubt. *See Butler v. Mooers*, 2001 ME 56, ¶ 7, 771 A.2d 1034, 1037; *Thermos Co. v. Spence*, 1999 ME 129, ¶ 5, 735 A.2d 484, 486.

[¶ 8] Second, we consider whether the question raised on report "might not have to be decided at all because of other possible dispositions." *Morris*, 1997 ME 179, ¶ 7, 698 A.2d at 1041. If, for example, fact-finding or determination of a preliminary issue such as the statute of limitations may render the reported question moot, the question may be discharged. *Id.*

¶ 9, 698 A.2d at 1041; *Sirois v. Winslow*, 585 A.2d 183, 185 (Me.1991); *State v. Placzek*, 380 A.2d 1010, 1013 (Me.1977).

[¶ 9] Third, we consider whether a decision on the issue would, in at least one alternative, dispose of the action. *See Swanson v. Roman Catholic Bishop of Portland*, 1997 ME 63, ¶ 6, 692 A.2d 441, 443. It is sufficient that there be one possible avenue for decision that would dispose of the action. *Id.*

[¶ 10] We next review and explain the nature of the questions presented in this case. The first question asks us to determine whether 24–A M.R.S. § 2411 requires the insurer to prove that the misrepresentation is both fraudulent *and* material in order to obtain rescission of the policy, or whether the statute requires the insurer to prove fraud *or* materiality, but not both. The second question asks us to determine whether section 2411 requires an insurer to prove that it actually relied on the misstatement. The third question asks us to determine whether section 2411 permits the rescission of a renewal policy when the misrepresentation was made not in the application for the renewal, but rather in the original application for insurance. The fourth question asks us to rule on whether either party is entitled to partial summary judgment on the issue of actual reliance. The fifth question asks us to determine whether either party is entitled to partial summary judgment on the issue of fraud.

[¶ 11] We accept and answer the first three questions presented because they meet the criteria established pursuant to

4. M.R.App. P. 24 closely tracks the former M.R. Civ. P. 72. M.R.App. P. 24 Advisory Note, Jan. 1, 2001. We therefore look to cases under the former M.R. Civ. P. 72 when interpreting M.R.App. P. 24. *See, e.g., White v. Fleet Bank of Me.*, 1999 ME 148, ¶ 2, 739 A.2d 373, 374–75. Although the applicable rule in *White* was M.R. Prob. P. 72, the court notes that the probate rule incorporated M.R. Civ. P. 72. *White*, 1999 ME 148, ¶ 1 n. 1, 739 A.2d at 374.

Rule 24. These questions present novel issues of statutory interpretation and are capable of frequent repetition. Our answers will affect the nature of the evidence that must be presented in actions brought to rescind policies pursuant to section 2411. These questions therefore meet the criterion of importance. They are also in doubt because, as we explain in addressing the merits, section 2411 is ambiguous.

[¶ 12] Assessing these questions in light of the remaining Rule 24 criteria is more complex. We note that the first and second reported questions relate to fraud, materiality, and actual reliance. Depending on how the facts are developed at trial, there is a possibility that these questions could be rendered moot. Therefore, if these had been the sole questions presented on report, we would likely have discharged them to be determined in the first instance at the trial court level. However, the third reported question meets Rule 24 criteria. Our response to it would, under one alternative, dispose of the entire action. If we were to decide that section 2411 does not permit rescission of a renewal policy based on misrepresentations in the original application, Liberty would have no cause of action on the renewal policy. When multiple questions are presented on report, considerations of judicial economy may weigh in favor of accepting certain questions that independently may not meet Rule 24 criteria. We accept the third question because it meets Rule 24 criteria, and we accept the first two for judicial economy.

[¶ 13] We now turn to the merits of the first three reported questions and explain why we discharge the others.

**Question 1**

[¶ 14] We answer the first reported question in the affirmative. Title 24–A M.R.S. § 2411 requires an insurer to prove both fraud and materiality in an action for rescission of an insurance policy.

[¶ 15] We review statutory interpretation de novo as a question of law. *State v. Thongsavanh,* 2007 ME 20, ¶ 27, 915 A.2d 421, 427. The "primary purpose in statutory interpretation is to give effect to the intent of the Legislature." *Arsenault v. Sec'y of State,* 2006 ME 111, ¶ 11, 905 A.2d 285, 288. We "first examine the plain meaning of the statutory language seeking to give effect to the legislative intent, and we construe the statutory language to avoid absurd, illogical, or inconsistent results." *Nasberg v. City of Augusta,* 662 A.2d 227, 229 (Me.1995). "We also construe the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *York Mut. Ins. Co. v. Bowman,* 2000 ME 27, ¶ 5, 746 A.2d 906, 908 (quotation marks omitted). We look to legislative history and other extraneous aids in interpretation of a statute only when we have determined that the statute is ambiguous. *Thongsavanh,* 2007 ME 20, ¶ 27, 915 A.2d at 427; *Darling's v. Ford Motor Co.,* 2003 ME 21, ¶ 7, 825 A.2d 344, 346.

[¶ 16] Section 2411 is ambiguous. Subsections (1) and (2) address fraud and materiality, respectively. These subsections are separated by the disjunctive "or," indicating that if either fraud or materiality is proved, a policy may be rescinded. However, the final paragraph of section 2411 restricts the disjunctive application to the specific types of insurance listed. Professional liability insurance is not among those listed. Thus, the implication is that both fraud and materiality must be proved for a rescission of a professional liability policy.

[¶ 17] This interpretation of section 2411 is consistent with 1 M.R.S. § 71(2)

(2007), which states: "The words 'and' and 'or' are convertible as the sense of a statute may require." It is also consistent with the legislative history of section 2411. Before the enactment of section 2411, an insurer could rescind a policy if an application contained a false fact that had been warranted by the insured; whether the fact was material to the risk assumed by the insurer was irrelevant. *Am. Home Assurance Co. v. Ingeneri,* 479 A.2d 897, 900 (Me.1984). The Legislature enacted section 2411 to address this problem. *Id.* at 900–01. "[S]ection 2411 manifests a legislative purpose to protect insureds." *Id.* at 901 (quotation marks omitted). In *Ingeneri,* we held that the legislative purpose of section 2411 would be defeated if it were not interpreted in the conjunctive to require proof of fraud, materiality, and actual reliance. *Id.*

[¶ 18] Section 2411 has been amended since *Ingeneri.* P.L.1999, ch. 223, § 1. The prior version of the statute listed fraud, materiality, and actual reliance in subsections (1), (2), and (3), respectively, separated by the disjunctive "or." *Id.* The 1999 amendment, which is the current version of the statute and the one applicable to this case, moved the actual reliance requirement to subsection (2), retained the disjunctive "or" between the subsections, and added the final paragraph specifying the types of insurance as to which the statutory requirements would operate in the disjunctive. *Id.* In *York Mutual,* we noted that section 2411 was amended "to clarify the Legislature's intent that [it] be read in the disjunctive." 2000 ME 27, ¶ 6 n. 1, 746 A.2d at 908 (citing Comm. Amend. A to L.D. 1762, No. H–246, Statement of Fact (119th Legis.1999)). However, the statute is to be interpreted in the conjunctive as applied to the types of insurance not identified in the amended section 2411.

## Question 2

[¶ 19] We answer the second question in the affirmative. An insurer must show actual reliance in order to rescind a policy.

[¶ 20] Section 2411 is ambiguous because, under the current version of the statute, the materiality and actual reliance requirements are both set forth in subsection 2411(2) and both address themselves to the decision-making undertaken by the insurer regarding issuing the insurance or contract, fixing the premium, determining the amount of coverage, or providing coverage for the particular hazard that resulted in the loss. The use of the words "such that" in section 2411(2) indicate that the materiality requirement is closely linked to the actual reliance test. We do not abandon the objective test of materiality that we adopted under the prior version of the statute in *York Mutual,* 2000 ME 27, ¶¶ 9–11, 746 A.2d at 909–10, because we believe the Legislature did not intend to abandon materiality as a distinct requirement when it amended the statute. Nevertheless, the statute also requires proof of actual reliance.

## Question 3

[¶ 21] We answer the third reported question in the affirmative. Section 2411 does permit rescission of a renewed lawyer's professional liability policy based on a misrepresentation in the original application for insurance.

[¶ 22] Section 2411 states that it applies to "the policy or contract." Section 2411 does not explicitly address whether a "policy or contract" includes renewal policies. However, with certain exceptions that do not apply here, 24–A M.R.S. § 2908(2) (2007) permits rescission of renewal policies:

[N]o contract of casualty insurance may be cancelled by an insurer prior to the

expiration of the policy, except for one or more of the following grounds:

....

B. Fraud or material misrepresentation made by or with the knowledge of the named insured in *obtaining the policy, continuing the policy* or in presenting a claim under the policy.

(Emphasis added.) Section 2908(2) is part of the Maine Insurance Code chapter that deals with casualty insurance contracts. 24–A M.R.S. §§ 2901–2927 (2007). Professional malpractice insurance is a form of casualty insurance pursuant to 24–A M.R.S. § 707(1)(J) (2007).[5] Title 24–A M.R.S. § 2908(1)(E) (2005)[6] defines "renewal" or "to renew" as

the issuance of, or the offer to issue by an insurer, a policy succeeding a policy previously issued and delivered by the same insurer *or* the issuance of a certificate or notice extending the terms of an existing policy for a specified period beyond its expiration date.

(Emphasis added.) A renewal of a casualty insurance policy may be rescinded pursuant to sections 2411 and 2908(1)-(2).

[¶ 23] However, our answer does not dispose of this issue; the insurer is still left with the burden of proving that the policy in question is in fact a renewal policy, i.e., that it is a succeeding policy or otherwise meets the requirements for renewal set forth in section 2908(1)(E). The facts will need to be applied in accordance with the principles that govern the making and interpretation of contracts in general, and insurance contracts in particular. These issues go beyond the question pre-

sented on report. Accordingly, although we answer the reported question in the affirmative, we do not determine whether the policy in issue in this case is a renewal policy.

**Questions 4 and 5**

 [¶ 24] We discharge the fourth and fifth questions. These do not involve novel issues of law. Rather, they require a determination as to whether the factual record, as it stands, would support partial summary judgment in favor of either party. This determination should be made in the first instance at the trial level rather than on report.

The entry is:

Report accepted in part and discharged in part. Remanded for further proceedings consistent with this opinion.

---

5. Casualty insurance includes "[i]nsurance against legal liability of the insured, and against loss, damage or expense incidental to a claim of such liability ... or arising out of damage to the economic interest of any person, as the result of negligence in rendering expert, fiduciary or professional service." 24–A M.R.S. § 707(1)(J) (2007).

6. Title 24–A M.R.S. § 2908(1)(E) has since been amended. P.L.2007, ch. 188, § C–1 (effective Sept. 20, 2007) (codified at 24–A M.R.S. § 2908(1)(E) (2007)).